FILED
CLERK, U.S. DISTRICT COURT
APR - 2 2008
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JACK CANFIELD, an individual; MARK VICTOR HANSEN, an individual; HANSEN & HANSEN LLC, a California limited liability company; CHICKEN SOUP FOR THE SOUL ENTERPRISES, INC., a California Corporation

Plaintiffs,

v.

HEALTH COMMUNICATIONS, INC., a Florida Corporation; and DOES 1-10, inclusive,

Defendants.

Case No: CV 08-890 SVW (JTLx)

ORDER GRANTING-IN-PART PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [5]

///

///

## I.   INTRODUCTION

Plaintiffs Jack Canfield ("Canfield"), Mark Victor Hansen ("Hansen"), Hansen & Hansen, and Chicken Soup for the Soul Enterprises., Inc. (collectively "Plaintiffs") bring this motion for preliminary injunction against Defendants Health Communications, Inc. ("HCI"), and Does 1-10 ("Defendant") to enjoin the use of Plaintiffs' trademark in "Chicken Soup for the Soul" on the cover of Defendants' future publications.  For the reasons set forth below, the Court GRANTS-IN-PART and DENIES-IN-PART Plaintiffs' motion.

## II.   FACTUAL BACKGROUND

Plaintiffs Canfield and Hansen were co-authors of the first "Chicken Soup for the Soul" book in the early 1990s, a popular book of inspirational short stories that has branched out into a series of successful similarly-titled books.  (Mot., 4; P. Hansen Decl., ¶ 3.) In 1997, the two obtained trademark registration on the phrase and letting of "Chicken Soup for the Soul."  (Mot., at 4; P. Hansen Decl., ¶ 7.)  Since that time, Plaintiffs have obtained trademarks in many other similar titles, such as "Chicken Soup for the Woman's Soul." (P. Hansen Decl., Ex. 2.)[1]  In 1998, Plaintiffs Canfield and Hansen licensed the exploitation of the trademarks to Chicken Soup for the Soul Enterprises ("CSSE").  (Id., at ¶ 9.)  Defendant HCI is a Florida-based company that served as the exclusive publisher of Chicken Soup for the Soul books beginning in 1993.  Since that time,

---

[1] Since this time it appears that in 2004 Plaintiff Mark Victor Hansen has assigned all of his interest relating to "Chicken Soup for the Soul" to Hansen & Hansen. (P. Hansen Decl., ¶ 8.)

the series has been a successful seller for HCI, comprising of 170 unique titles with more than 112 million copies sold. (Opp., at 5.)

The current publishing agreement between the parties was signed on July 1, 2000 and expires on July 1, 2008. (P. Hansen Decl., Ex. 15.) The agreement stipulates that until its expiration, HCI is the exclusive publisher of the Chicken Soup for the Soul series of books, and after that deadline HCI may distribute and print books from the Chicken Soup for the Soul backlist, but does not have the right to publish any new Chicken Soup for the Soul titles. (Id.) Plaintiffs have determined that they will not renew their publishing agreement with HCI. (Mot., at 5.) The agreement contains a provision, which reads:

> HCI acknowledges that H-C [Plaintiffs Hansen and Canfield] owns the trademark (defined as all CSSE registered trademarks, including the design of the words "Chicken Soup for the Soul" and the "little man holding the heart").

(P. Hansen Decl., Ex. 15, at § 12.) The dispute in this action centers on the publication of books for which Defendant has created mock-up covers, but has not yet published. These books include two new compilations of inspirational political stories, entitled "Democrat's Soul," and "Republican's Soul." (Vesgo Decl., ¶ 6.) In addition, HCI will release a series of books entitled the "Ultimate Series" - including "The Ultimate Horse Lover," "The Ultimate Dog Lover," and "The Ultimate Cat Lover." (Id.) HCI has created a website in order to garner submissions for these books that also contain mock covers. (Peluso Decl., ¶ 4.) It is these mock covers that are at the center of the instant dispute.

The iterations of the mock-ups of these future publications have changed since preliminary stages of this litigation. Initially, a number of the mock-ups contained prominent displays of the trademarked phrase "Chicken Soup for the Soul," in the trademarked cursive lettering, surrounded only by much smaller font stating that the book was presented by the publisher of the Chicken Soup series. (See Moore Decl., Ex. 6.) Since the time suit was filed, however, Defendant has removed any reference to "Chicken Soup for the Soul" from the mock covers of its "Ultimate Series" publications. (Peluso Decl., Ex G.) Additionally, the mock-up covers of "Democrat's Soul" and "Republican's Soul" now contain one consistent font in stating that it was the publisher of the Chicken Soup for the Soul series. (Id.) Plaintiffs contest the current use of the Chicken Soup for the Soul trademark by Defendant in unlicensed books for which HCI seek submissions.

## III. ANALYSIS

### A. Standard of Review

Plaintiffs seek a preliminary injunction prohibiting Defendant from printing the new HCI books with their currently proposed mock-ups. Under Ninth Circuit law, "[a] plaintiff is entitled to a preliminary injunction in a trademark case when it demonstrates "either (1) a combination of 'probable success on the merits' and 'the possibility of irreparable injury' or (2) the existence of 'serious questions going to the merits' and 'that the balance of hardships tips sharply in his favor.'" GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1205 (9th Cir.2000) (quoting Sardi's Restaurant Corp. v. Sardie,

755 F.2d 719, 723 (9th Cir.1985)); see also Abercrombie & Fitch Co. v. Moose Creek, Inc., 486 F.3d 629, 633 (9th Cir. 2007); Nautilus Group, Inc. v. ICON Health and Fitness, Inc., 372 F.3d 1330, 1334 (Fed. Cir. 2004). "Irreparable injury is ordinarily presumed upon a showing of a likelihood of success." Abercrombie, 486 F.3d at 633; see also GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1209 (9th Cir. 2000). Defendant relies on the Supreme Court's decision in eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006), to argue that the Court should apply the traditional equitable principles in granting injunctive relief. (Def. Opp., at 21-22.) However, that decision discussed infringement under only in the patent and copyright context. Id. at 392-93. The Ninth Circuit's rulings on injunction relief in the trademark infringement context were undisturbed and have been reaffirmed subsequent to eBay. Abercrombie, 486 F.3d at 633. As such, the central inquiry for the Court in determining the appropriateness of a preliminary injunction is whether Plaintiffs' claim of trademark infringement against Defendant is likely to succeed. If the claim is likely to succeed then irreparable injury may be presumed. Defendant has no offered evidence to rebut the presumption that Defendant's alleged infringement, if proven, would injuriously dilute Plaintiffs' mark.

///

///

**B. Use of the Trademark**

Neither party contests that there is use of the Chicken Soup for the Soul trademark, and that use of that mark for future publications will end when the licensing agreement terminates. Instead, the parties dispute the use of the mark in relation to the mock-ups that will be published in the coming year, after the expiration of the licensing agreement. (Opp., at 9.)

**C. Fair Use**

Defendant HCI asserts that its use of Plaintiffs' "Chicken Soup for the Soul" trademark falls under the protections of the fair use defense to trademark infringement. Under Ninth Circuit analysis, there are two distinct forms of the fair use defense – the "classic" or statutory fair use, and the "nominative" fair use. Brother Records, Inc. v. Jardine, 318 F.3d 900, 903 (9th Cir. 2003). See also New Kids on the Block v. News America Publ., Inc., 971 F.2d 302, 308-309 (9th Cir. 1992). Defendant claims that under either test, its use of Plaintiffs' mark constitutes fair use and therefore does not violate the Lanham Act. For the reasons outlined below, the Court finds that classic or statutory fair use protection is not applicable to Defendant's use of the mark, and that certain elements of its use do not fall under the protections of nominative fair use.

1. Statutory Fair Use

Defendant HCI contends that it does not use "Chicken Soup for the Soul" as a trademark, but rather uses it merely to describe the series of books it once published. (Opp., at 9.) In essence, Defendant argues that since its reference to the book series is simply a fact

that it previously published the Chicken Soup for the Soul series it is not using the term as its mark, but rather as a factual statement. (Opp., at 10-11.)

Statutory fair use is codified at 15 U.S.C. § 1115(b)(4), which provides: "the use of the name, term or device charged to be an infringement is a use, otherwise than as a mark . . . of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin." The Ninth Circuit distinguishes statutory fair use from nominative fair use based on the nature of the reference to the mark. In Brother Records, the Ninth Circuit stated:

> The nominative fair use analysis is appropriate where a defendant has used the plaintiff's mark to describe the plaintiff's product, even if the defendant's ultimate goal is to describe his own product. Conversely, the classic fair use analysis is appropriate where a defendant has used the plaintiff's mark only to describe his own product, and not at all to describe the plaintiff's product.

318 F.3d at 903-904 (quoting Cairns v. Franklin Mint Co., 292 F.3d 1139, 1152 (9th Cir. 2002)). When discussing its own precedent, the Ninth Circuit stated that "the nominative fair use defense, as opposed to the classic fair use defense, clearly [applies] because the defendant used the plaintiff's mark undeniably to refer to the plaintiff's product, even though the defendant's ultimate goal was to describe his own product." Id. at 904. The Ninth Circuit further elaborated this distinction by stating that protection under Section 1115(b)(4) applies only when the underlying mark "is used in its primary descriptive sense rather than its secondary trademark sense."

Id. at 905 (citing Cairns, 292 F.3d at 1150-51 ("Under the common law classic fair use defense . . . '[a] junior user is always entitled to use a descriptive term in good faith in its primary, descriptive sense other than as a trademark.'") (quoting 2 J. Thomas McCarthy, McCarthy on Trademark and Unfair Competition § 11:45 (4th ed. 2001))). In Brother Records, the Ninth Circuit navigated through its prior and noted that it has "consistently . . . applied the classic fair use analysis to infringement cases involving descriptive marks used in their primary, descriptive sense." 318 F.3d at 906.

Defendant's own citations bear out such a distinction. In Brothers Records, the Ninth Circuit was confronted with an assertion by Al Jardine, a former member of The Beach Boys, that he was protected by statutory fair use when naming his new rock group, which went under such names as "Al Jardine of the Beach Boys and Family & Friends; The Beach Boys 'Family and Friends'; Beach Boys Family & Friends; The Beach Boys, Family & Friends; Beach Boys and Family; as well as, simply, The Beach Boys." Brothers Records, 318 F.3d at 902. After discussing the distinction between statutory and nominative fair use, the court found that Jardine's use of the Beach Boys mark did not qualify for protection under statutory fair use. Id. at 907. Specifically, the court stated that:

> Jardine does not use "The Beach Boys" trademark to denote its primary, descriptive meaning of "boys who frequent a stretch of sand beside the sea." Instead, Jardine uses "The Beach Boys" trademark in its secondary, trademark sense, which denotes the music band-and its members-that popularized California surfing culture. This is true regardless of whether Jardine's use of the mark refers to Jardine himself or to the band. Because Jardine

> does not use the mark in its primary, descriptive sense, the classic fair use defense does not apply.

Id. The court additionally cites to its decisions in New Kids, 971 F.2d 302; Cairns, 292 F.3d 1139; and Playboy Enters., Inc. v. Welles, 279 F.3d 776 (9th Cir. 2002) as examples of uses that did not fall under statutory fair use. In New Kids, the court noted that the "defendant newspapers in New Kids did not use the trademark 'New Kids on the Block' to denote its primary, descriptive meaning of 'children who recently moved to this area bounded by streets on four sides.'" Brother Records, 318 F.3d at 907, n. 3 (quoting New Kids, 971 F.3d at 308.) Instead, the use was a reference to the popular music group from the early 1990s. Similarly, in Playboy, a case involving former Playboy Playmate of the Year's use of the Playboy trademark on her website, the Ninth Circuit did not find statutory fair use applicable because the defendant Playmate was not using the mark to denote "a companion in games and recreation to a man of means who is given to pleasure-seeking." Playboy, 279 F.3d at 802.[2] Accordingly, the Ninth Circuit has found statutory fair use applicable in situations where the reference to the trademarked slogan or language is made in a descriptive sense. See, e.g., In re Dual-Deck Video Cassette Recorder Antitrust Litig., 11 F.3d 1460, 1467 (9th Cir. 1993) (defendant's use of plaintiff trademark "VCR-2" qualifies as statutory fair use where defendant's mark is used as a description of a second terminal in plaintiff's video cassette recorder); Entrepreneur Media, Inc. v.

[2] Defendant cites to Playboy to support its proposition that statutory fair use applies in the instant litigation. The Ninth Circuit in Playboy, however, determined fair use on the basis of *nominative* fair use, not statutory fair use. The Ninth Circuit's example of the descriptive meaning of "Playboy Playmate" illustrates the distinction that Brothers Records sets forth.

Smith, 279 F.3d 1135 (9th Cir. 2002) (finding statutory fair use and concluding that plaintiff's trademark in the word "entrepreneur" applied to printed publications pertaining to business opportunities but could not have exclusive mark in the descriptive term "entrepreneur"). Such an interpretation is in line with the overarching policy goal of balancing the protection of property rights with the cost in removing the use of words from our language. See New Kids, 971 F.2d at 306. See also Restatement (Third) of Unfair Competition § 28 cmt. a ("Trademark rights ... extend only to the source significance that has been acquired by such terms, not to their original descriptive meanings.").

In the instant action, statutory fair use does not apply to the Defendant's incorporation of Plaintiffs' mark. Defendant asserts that it is attempting simply to state a fact - that it did publish the relevant Chicken Soup for the Soul series - and it is not using the Plaintiffs' trademark as a mark. That Defendant was the publisher of the Chicken Soup series does not change the use of the mark on the relevant covers. The reference to Chicken Soup for the Soul is a reference to the Plaintiffs' mark, independent of the Defendant's publication of that series. Such a reference is not descriptive of the actual language used - i.e., Defendant is not alluding to a warm concoction of chicken and broth soothing to one's spiritual self, nor figuratively to a group of heart-warming stories - instead, Defendant is referring specifically to Plaintiffs' mark and the series of books it published. Such use is not analogous to the descriptive meaning applied by the Ninth Circuit in Dual Deck and Entrepreneur Media. Rather, the meaning is directly related to the mark, just as in

Brother Records or Playboy. Accordingly, the Court finds that statutory fair use does not apply in this action.[3]

2. Nominative Fair Use

As set forth in the analysis, the Ninth Circuit distinguishes between statutory fair use and nominative fair use. Nominative fair use is appropriate "where a defendant has used the plaintiff's mark to describe the plaintiff's product, even if the defendant's ultimate goal is to describe his own product." Brother Records, 918 F.3d at 903-904. The Ninth Circuit first presented this form of defense in New Kids, where it found that a defendant may claim nominative fair use where three requirements are met: "First, the product or service in question must be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and third, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." 971 F.2d at 308. In adopting this test, the Ninth Circuit noted that "it is often virtually impossible to refer to a particular product for purposes of comparison, criticism, point of reference or any other such purpose without using the mark." Id. at 306. When asserted as a nominative fair use defense, the above three-part test replaces the

[3] This finding is also relevant to the three-step analysis that Defendant's propose the Court undertake. In this instance, our finding applies two step one of the three elements - that defendant's use of the term is not as a trademark or service mark. See Cairns, 292 F.3d at 1151. In this instance, as described above, Defendant is using the term as reference to Plaintiff's mark.

likelihood of confusion analysis under Sleekcraft.[4] See Cairns, 292 F.3d at 1151. See also Playboy, 279 F.3d at 801.[5] The Court will analyze Defendant's nominative fair use claim under each of the relevant factors.

///

///

---

[4] Defendant argues that the existence of consumer confusion is not relevant to the fair use analysis in light of the Supreme Court's holding in KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111 (2004). In KP Permanent, the Supreme Court, when analyzing classic or statutory fair use, found that consumer confusion was not necessary for a finding of statutory fair use. 543 U.S. at 118. This analysis, however, was predicated on the statutory interaction between 15 U.S.C. § 1114 - setting forth the elements of trademark infringement and requiring a showing of consumer confusion - and 15 U.S.C. § 1115(b)(4) - defining statutory fair use and not including consumer confusion. See id. This holding, as stated, relied on the statutory framework and does not apply to nominative fair use. Indeed, the case demonstrates another example of the distinction between statutory fair use and nominative fair use. In KP Permanent, the Plaintiff both parties used the term "micro color" in describing their respective products and the defendant asserted fair use based on the terms *descriptive* nature. The courts accordingly engaged in a statutory fair use analysis.

[5] Specifically, the Ninth Circuit stated as the rationale for such a rule:

> The three-factor test better evaluates the likelihood of confusion in nominative use cases. When a defendant uses a trademark nominally, the trademark will be identical to the plaintiff's mark, at least in terms of the words in question. Thus, application of the Sleekcraft test, which focuses on the similarity of the mark used by the plaintiff and the defendant, would lead to the incorrect conclusion that virtually all nominative uses are confusing. The three-factor test-with its requirements that the defendant use marks only when no descriptive substitute exists, use no more of the mark than necessary, and do nothing to suggest sponsorship or endorsement by the mark holder-better addresses concerns regarding the likelihood of confusion in nominative use cases.

Playboy, 279 F.3d at 801.

a. Identifiability

In the Ninth Circuit, the first requirement for nominative fair use is that the "product or service in question must be one not readily identifiable without use of the trademark . . . ." New Kids, 971 F.2d at 308. There appears to be some confusion in the Ninth Circuit regarding the meaning of "readily identifiable" - whether the phrase refers to the identifiability of the plaintiff trademark holder, or the ability of the defendant to identify itself. The Ninth Circuit's opinion in Playboy was ambiguous in its discussion of this element when it stated:

> "[T]here is no other way that Ms. Welles can identify or describe herself and her services without venturing into absurd descriptive phrases. To describe herself as the "nude model selected by Mr. Hefner's magazine as its number-one prototypical woman for the year 1981" would be impractical as well as ineffectual in identifying Terri Welles to the public."
>
> We agree. Just as the newspapers in New Kids could only identify the band clearly by using its trademarked name, so can Welles only identify herself clearly by using PEI's trademarked title.

Playboy, 279 F.3d at 802 (quoting PEI v. Welles, 78 F. Supp. 2d 1066, 1079 (S.D. Cal. 1999)). In this language, the Ninth Circuit appears to support the theory that this factor is about the ability to identify oneself through use of the mark - such as Ms. Welles's ability to describe her position - and the ability to identify the product, service, or object protected by trademark - the newspapers using the phrase "New Kids on the Block" to describe the popular music group from the early 1990s. The language of Playboy, indicates, whatever the corollary propositions may suggest, that the concern is

the ability to identify the mark without use of the mark. Hence, in Playboy, the Ninth Circuit analyzed whether Ms. Welles could identify the mark without use of the actual mark. Such an interpretation of this factor is in line with the examples that the Ninth Circuit often presents. In New Kids, the court discussed how "sometimes there is no descriptive substitute, and a problem closely related to genericity and descriptiveness is presented when many goods and services are effectively identifiable only by their trademarks." 971 F.2d at 306. The court used the example of the Chicago Bulls professional basketball team, which could be stated as "'the professional basketball team from Chicago,' but it's far simpler (and more likely to be understood) to refer to the Chicago Bulls.'" Id. A similar example is the use of the Volkswagen mark to describe the cars repaired by an automobile repair ship. See Volkswagenwerk Aktiengesellschaft v. Church, 411 F.2d 350, 352 (9th Cir. 1969). Such use of the mark to refer to the product in these instances is appropriate.

In this case, Defendant's use satisfies the first prong. It would be infeasible to state that it was the publisher of a "series of heart-warming books containing short stories about the perseverance of individuals in difficult times." Instead, the publisher of the Chicken Soup for the Soul series, HCI, makes reference to the Plaintiffs' mark for purposes of identifying it. Such use is appropriate as the product that Plaintiffs' placed into the marketplace - in association with the Defendant - is "not readily identifiable without the use of the trademark." New Kids, 971 F.2d at 308. Accordingly, the first prong of the nominative use analysis is satisfied.

b. Reasonable use of the trademark

The second factor in nominative fair use requires that only so much of the mark is used as is reasonably necessary to identify the product or service. New Kids, 971 F.2d at 308. This factor examines the way in which the mark is used as an identifying feature by the Plaintiffs; specifically whether there are any distinct elements that are embodied in the mark, but not necessary to identify the mark. In Cairns, the Ninth Circuit discussed this issue with reference to its own precedent and modern examples. The court explained that a "soft drink competitor would be entitled to compare its product to Coca-Cola or Coke, but would not be entitled to use Coca-Cola's distinctive lettering." Cairns, 292 F.3d at 1153-54 (quoting New Kids, 971 F.2d at 308 n. 7.) See also Toho Co. v. William Morrow & Co., 33 F. Supp. 2d 1206, 1209, 1211 (C.D. Cal. 1998) (finding that a publisher using "Godzilla" used more of the mark than "reasonably necessary" when "the title [was] written in the distinctive lettering style used by [the trademark holder] and its licensees in their merchandising activities"). The Ninth Circuit has found that this is an individualized analysis, and that what is reasonably necessary to identify the product or service will differ on a case by case basis. Cairns, 292 F.3d at 1154. The Ninth Circuit has also stated "[w]here the description of the defendant's product depends on the description of the plaintiff's product, more use of the plaintiff's trademark is 'reasonably necessary to identify the plaintiff's product' than in cases where the description of the defendant's product does *not* depend on the description of the plaintiff's product."

In the instant action, Plaintiffs object to the use of the mark

"Chicken Soup for the Soul" on the cover of future prints of Defendant's unassociated books. (Reply, at 7.) Defendant contends that it is a fact that it was the publisher of the Chicken Soup for the Soul books and it is simply using the mark to identify that fact. (Opp. at 19.) When Plaintiffs applied for this preliminary injunction, it appeared that the future publications by Defendant contained a rather prominent display of the Chicken Soup mark, while minimizing the font surrounding that mark, which indicated that it was the publisher of the series. The use of the mark also included the stylized form of writing that was used as part of the mark registered by Plaintiffs. Such use of the mark, by including the stylized writing, was likely more than was necessary to identify the product. The Defendant, however, submitted with its opposition the new covers that it will use in the publication of the books. For the books "Ultimate Dog Lover," "Ultimate Cat Lover," and "Ultimate Horse Lover," the Defendant has removed Plaintiffs' mark entirely from the cover. (Peluso Decl., Ex. G.) As to the books entitled "Republican's Soul" and "Democrat's Soul," however, Defendant does use the Plaintiffs' mark. Defendant, however, uses only the text, without any of the stylized writing that the Ninth Circuit has stated would be objectionable. In addition, the use of the mark is surrounded by similarly sized text. (Peluso Decl., Ex. H.) Accordingly, Defendant's use is reasonable in this case to identify itself as the publisher of the series and it does not use more than is reasonably necessary to identify the mark.

///

///

c. Suggestion of Sponsorship

The third element of the nominative fair use analysis is whether Defendant has done anything "that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." Playboy Enterprises, 279 F.3d at 796 at 803. The Ninth Circuit has noted that this element is merely "the other side of the likelihood-of-confusion coin." By this assertion, the court meant that "whereas plaintiff carries the burden of persuasion in a trademark infringement claim to show likelihood of confusion . . . the nominative fair use defense shifts to the defendant the burden of proving no likelihood of confusion." Brother Records, 318 F.3d at 909. It does not appear likely that Defendant will meet this burden based on the exhibits presented. Multiple elements of the mock-ups as currently projected by Defendant when taken together create a clear suggestion of sponsorship by Plaintiffs. As an initial matter, Plaintiffs' mark is exhibited prominently at the top of the mock-ups still at issue, while there is no display of the actual writers or editors anywhere on the mock-up. The space where it appears a reference to the creators of the book might go is no larger than that devoted to Plaintiff's mark. (Peluso Dec., Ex. G, at 8.) This prominence and placement creates a potential suggestion of sponsorship. See Brother Records, 318 F.3d at 908 ("Jardine's promotional materials display 'The Beach Boys' more prominently and boldly than "Family and Friends," suggesting sponsorship by the Beach Boys.) However, this potential is mitigated by the fact that Plaintiff's mark appears in a sentence clearly referencing its limited association with the new books and without trade dress. (Peluso Dec., Ex. G, at 8.) Hence the prominence of the

mark as it appears in the mock-ups would not alone create an impermissible suggestion of sponsorship.

Nonetheless, the Court finds that in conjunction with the specific nature and titles of the new books and the mock-ups, the prominence of the mark does create a suggestion of sponsorship. The "Republican's Soul" and "Democrat's Soul" are books nearly identical in format to the Chicken Soup for the Soul books, apparently featuring a compilation of writings relevant to people of a particular persuasion. Indeed, as both parties acknowledge, these books were at a prior time slated to be Chicken Soup for the Soul books. (Plaintiff Mot., at 2; Def. Mot., at 6.) This similarity greatly heightens the possibility that consumers will mistakenly believe in light of the prominence of Plaintiff's mark that the "Democrat's Soul" and "Republican's Soul" are not merely from the same publisher as the Chicken Soup for the Soul books, but are in fact sponsored by the Plaintiffs. KP Permanent Make-Up, 408 F.3d at 608 (noting that "proximity or relatedness of the goods" is a factor in the standard likelihood of confusion analysis). Such confusion is made considerably more probable by Defendant's selection of titles for these books utilizing the word "soul" and so unmistakably echoing the titles of the Chicken Soup for the Soul books. (Peluso Dec., Ex. G, at 8.) This close proximity of format and title of the new HCI  books to the Chicken Soup for the Soul books hence ultimately renders Defendant's prominent display of Plaintiff's impermissibly suggestive of sponsorship.[6] If Defendant wishes to avoid this appearance of

---

[6] Plaintiff also seeks to submit evidence of actual confusion by electronic booksellers, newspapers, and freelance writers as to level of their association with the new HCI books. (Plaintiff Mot., 11-13.) However, the provenance of some of this evidence is

sponsorship, it must display Plaintiff's mark in a less prominent fashion or avoid titles so strongly reminiscent of the Chicken Soup for the Soul books. Until such changes are made, Defendant's use of Plaintiff's trademark cannot be regarded as nominative fair use.

///

///

somewhat contested and all of the evidence predates the newest versions of the mock-ups at issue. (Def. Opp., at 6-9.) Therefore the Court does not rely on this evidence. In any case, Plaintiff is under no burden to show actual confusion and it is clear based on the mock-ups themselves that confusion is likely. Hence the evidence is unnecessary to the Court's determination.

**IV. CONCLUSION**

The Court GRANTS Plaintiffs a preliminary injunction prohibiting Defendant from utilizing Plaintiffs' mark in mock-ups of the covers of and future covers of "Democrat's Soul" and "Republican's Soul" in its prominent location.[7] The Court finds that, as to these uses of the mark, there would be a likelihood of success on the merits. In addition, in light of Defendant's frequent changes to the mock-ups, the Court requires Defendant to inform Plaintiffs of any changes in its use of Plaintiffs' mark in any of the mock-ups for five new HCI books originally at issue prior to making the changes so that Plaintiffs' may have an opportunity to bring further challenge if necessary. Bond pursuant to Fed. R. Civ. P. 65(c) is set at $10,000.

IT IS SO ORDERED.

DATED: April 1, 2008

STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE

---

[7]In their original Motion, Plaintiffs appear to take issue with the publication of a book entitled "Chicken Soup for the Basketball Soul," claiming that this is an unauthorized exploitation of the mark. (Mot., at 2.) In opposition, Defendant noted that this was done with knowledge and permission, it is a Chicken Soup book and was cited as such. (Opp., at 9 (citing Vegso Decl., ¶ 7.) There was no reply to this argument presented in the moving papers, therefore the Court cannot find a likelihood of success on this point.